Rosemary M. Rivas (SBN 209147)
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Fax: (415) 484-1294
Email:  rrivas@zlk.com

*Counsel for Plaintiff Brian Clevlen*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CLEVLEN, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ANTHERA PHARMACEUTICALS, INC., PAUL F. TRUEX, CRAIG THOMPSON, MAY LIU and WILLIAM SHANAHAN | Case No. 3:17-cv-715<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian Clevlen ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Anthera Pharmaceuticals, Inc. ("Anthera" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a securities class action on behalf of all persons who purchased Anthera common stock between February 10, 2015 and December 27, 2016, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against certain of Anthera's executive officers and directors.

2.     Anthera is biopharmaceutical company focused on advancing the development and commercialization of innovative medicines that benefit patients with unmet medical needs. The company has two product candidates in development: (1) Sollupura (also known as Liprotamase), a novel biotechnology-derived pancreatic enzyme replacement therapy ("PERT") for the potential treatment of exocrine pancreatic insufficiency ("EPI") in patients with cystic fibrosis; and (2) Blisibimod, a B-cell activating factor ("BAFF") Inhibitor for the potential treatment of IgA nephropathy.

3.     The Company is headquartered in Hayward, California and trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "ANTH."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations and compliance.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) patients were not improving in the CHABLIS-SC1 clinical trial; and (2) there were dosing problems inherent in the Solution study design that created challenges to obtaining responses.

5.     On November 10, 2016, prior to the market opening, the Company issued a press release announcing that the CHABLIS-SC1 clinical trial with blisibimod for the treatment of systematic lupub erythematosus ("SLE") failed to meet its primary endpoint.   Defendants further revealed that the trial's structure likely hindered the results by not allowing some patients to increase their dosage during the testing. As some analysts have stated, "while the drug was billed as a selective antagonist of BAFF," that intended purpose "doesn't look like it holds much water."  Accordingly, Defendants would likely abandon the trial

6.     Upon this news, Anthera's closing share price fell approximately 32% from $2.78 on November 9, 2016, to $1.90 on November 10, 2016.

7.     The following month, on December 27, 2016, the Company issued another press release, announcing the Solution clinical study in cystic fibrosis patients with EPI missed the CFA non-inferiority margin of the primary modified Intent to Treat ("mITT").  On this news, Anthera's closing share price fell approximately 63% from $2.01 per share on December 27, 2016 to $0.74 per share on December 28, 2016.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

11.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District.  Anthera is headquartered in this District, with its principal place of business located at 25801 Industrial Boulevard, Suite B, Hayward, California, 94545.

**PARTIES**

13.     Plaintiff Jim Ferrari is a citizen of Tennessee. He purchased Anthera securities as set forth herein and in his certification filed herewith.

14.     Anthera is a corporation incorporated in Delaware with its principal executive offices located at 25801 Industrial Boulevard, Suite B, Hayward, California 94545.

15.     Defendant Paul F. Truex ("Truex") was Chief Executive Officer ("CEO") of the Company until his resignation on December 2, 2016.

16.     Defendant Craig Thompson ("Thompson") was appointed as Anthera's Chief Executive Officer ("CEO") upon Truex's resignation on December 2, 2016, effective December 6, 2016.   Thompson is also the President of Anthera.   Previously, as of January 7, 2016, Thompson was the Company's President and Chief Operating Officer.

17.     Defendant May Liu is the Senior Vice President, Finance and Administration.

18.     Defendant William Shanahan ("Shanahan") is Anthera's Chief Medical Officer.

19.     Defendants Truex, Thompson Liu and Shanahan are collectively referred to herein as the "Individual Defendants."

20.     Anthera and the Individual Defendants are collectively referred to as the "Defendants."

## CONTROL PERSON ALLEGATIONS

21.     By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Anthera's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

**Background**

22.     Anthera is a biopharmaceutical company focused on advancing the development

and commercialization of innovative medicines that benefit patients with unmet medical needs. The company has two product candidates in development:

- Sollpura (also known as Liprotamase), a novel biotechnology-derived pancreatic enzyme replacement therapy ("PERT") for the potential treatment of exocrine pancreatic insufficiency ("EPI") in patients with cystic fibrosis; and

- Blisibimod, a B-cell activating factor ("BAFF") Inhibitor for the potential treatment of IgA nephropathy.

23.    Sollpura represents the first soluble, stable and non-pig derived PERT to offer a novel solution to patients, especially young children and adults who are either unable to swallow multiple pills or are forced to use gastric tubes in order to maintain appropriate nutritional health. Unlike other enzyme products for the treatment of EPI, Sollpura's chemical characteristics, its solubility and stability, make it an ideal product in either a capsule or sachet formulation which can be conveniently co-administered with a variety of food products.

24.    Anthera is conducting two studies with Sollpura: (1) the Solution Study; and (2) the Simplicity Study.  The purpose of the Solution Study is to evaluate the non-inferiority of Sollpura compared to approved, porcine-derived enterically-coated pancreatic enzyme replacement therapy when administered to patients with cystic fibrosis and endocrine pancreatic insufficiency.  The Simplicity Study will evaluate the safety and efficacy of Sollpura powder for oral solution, supplied in sachets.

25.    Blisibimod is a selective peptibody antagonist of the BAFF cytokine, also known as B lymphocyte stimulator ("BLyS"), which is initially being developed as a treatment for lupus. BAFF is a member of the tumor necrosis factor family and is critical to the development, maintenance and survival of B-cells and plasma cells. It is primarily expressed by macrophages, monocytes and dendritic cells and interacts with three different receptor subtypes expressed predominantly on B-cells and plasma cells including BAFF receptor ("BAFF-R"), B-cell maturation antigen ("BCMA"), and transmembrane activator and cyclophilin ligand interactor ("TACI").    Blisibimod may offer a number of potential advantages over other BAFF antagonists, such as: (i) Tetravelent BAFF binding domans which give to 120-350-fold higher

CLASS ACTION COMPLAINT

1  avidity for blisibimod than reported for monocoional antibodies; (ii) the ability to bind to both

2  membrane-bound and soluable BAFF; (iii) lower molecular weight providing more drug per

3  200mg weekly dose; and (iv) distinct intellectual property as a peptibody (relative to antibody

4  and antibody-fragments).

5  **The Material Misrepresentations and Omissions**

6       26.    On February 10, 2015, the Company announced the successful completion of an

7  interim analysis of its Phase 3 trial (CHABLIS-SC1) of blisibimod in patients with SLE.  The

8  Company was "pleased" with the study's ability to pass a "critical milestone" and seemed

9  optimistic about the success of the remainder of the Phase 3 trial.  The press release stated, in

10  pertinent part:

> D, Calif., Feb. 10, 2015 /PRNewswire/ -- Anthera Pharmaceuticals,
> Inc. (NASDAQ: ANTH) today announced the successful
> completion of an interim analysis of its Phase 3 trial (CHABLIS-
> SC1) of blisibimod in patients with Systemic Lupus Erythematosus
> and that the study should continue to completion as planned. An
> independent statistician conducted the interim futility analysis for
> the CHABLIS-SC1 study, evaluating the SRI-6 response at the 24
> week time point. Enrollment in the trial is projected to conclude in
> mid-2015.
>
> ***"While the results of the CHABLIS-SC1 interim futility analysis
> remain blinded to Anthera, we are very pleased that the study has
> passed this critical milestone and now look forward to finishing
> enrollment later this year,"*** said Dr. Colin S. Hislop, Anthera's
> Chief Medical Officer.
>
> Prior to the interim analysis and in response to recent input from
> the Company's Scientific Advisory Board following the
> publication of clinical data from other Lupus studies with BAFF
> inhibitors, the Company modified the primary endpoint of
> CHABLIS-SC1 from SRI-8 response to SRI-6 response, which
> was previously a secondary endpoint of the study. SRI-8 will
> remain a key secondary endpoint of the study. The Systemic Lupus
> Erythematosus Response Index (SRI) is an approved endpoint
> recognized by the FDA for previously approved therapeutics.
>
> "Based on the wealth of new information regarding the treatment
> of SLE and BAFF inhibition, we are fortunate to have had the
> opportunity to adjust our trial design," said Dr. Colin S. Hislop.
> "The SRI-6 endpoint has a history of consistency across ***multiple
> trials and represents the best possibility for success. Maintaining***

*the SRI-8 endpoint as a key secondary endpoint can maximize our commercial opportunity for the severe patients we are enrolling in the CHABLIS-SC1 study.*"

(Emphasis added).

27.     On August 10, 2015, Anthera issued a press release announcing that the Company "surpassed the enrollment target of 400 patients for the Phase 3 CHABLIS-SC1 clinical study" during the second quarter of 2015 and that "[t]opline efficacy and safety data from the study is expected in the second half of 2016."

28.     On November 6, 2015, the Company repeated that enrollment was closed for the Phase 3 CHABLIS-SC1 clinical study and "[t]opline efficacy and safety data from the study is expected the second half of 2016."

29.     On March 14, 2016, the Company filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results.   The Company stated a summary of its product development programs, noting that the CHABLIS-SC1 Phase 3 trial "[t]opline data" was expected "in the second half of 2016" and the Solution Phase 3 "[t]opine data" was expected "towards end of 2016 or early 2017."

30.     The Form 10-K stated:

> We believe liprotamase is potentially the first soluble, stable and non-porcine derived enzyme product to offer a novel solution to patients who are unable to maintain appropriate nutritional health. Liprotamase's chemical characteristics, unlike currently available PERTs, make it ideal for powder formulation as either a capsule, or sachet of powder for oral solution which can be conveniently administered in solution in a small volume of water.

31.     The Form 10-K further stated: "We believe the CHABLIS development program for blisibimod may offer a number of potential opportunities for differentiation versus the currently marketed BAFF antagonist and other novel B-cell directed therapies."

32.     The Form 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Individual Defendants Truex and Liu, stating that the financial information contained therein was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.     On August 9, 2016, the Company announced that it met the enrollment target for

7

CLASS ACTION COMPLAINT

Phase 3 Solution clinical study and that it expected to "report topline efficacy data in the fourth quarter of 2016." With respect to the Phase 3 CHABLIS-SC1 clinical study, the Company reported that it "continue[s] to collect and prepare final data from the . . . clinical study as the final patients continue treatment in the study." The press release explained that:

> The last patient in the study received their final study dose on July 28th. As described in the protocol, patients are followed for eight weeks after their last dose at which time the final safety data is collected. Due to timing of this final visit, the company expects topline efficacy and safety data will be available prior to the annual American College of Rheumatology Annual Meeting in November. Topline data from the CHABLIS-SC1 will include the primary endpoint evaluation, a six-point reduction in the Systemic Lupus Erythematosus Responder Index (SRI-6) as well as safety and tolerability data from the study.

34.     On November 4, 2016, the Company announced that it was "working diligently through the adjudication for the CHABLIS-SC-1 study, which completed the last patient visit in September. We currently plan to report topline efficacy and safety data prior to the 2016 American College of Rheumatology Annual Meeting taking place from November 11th to November 16th. Topline data from the CHABLIS-SC1 will include the primary endpoint evaluation, the Systemic Lupus Erythematosus Responder Index (SRI-6) as well as safety and tolerability data from the study."

35.     With respect to the Solution clinical trial, the press release stated that enrollment was completed and that "topline efficacy data" was expected to be reported before the end of 2016.

36.     These statements were false and misleading because defendants failed to disclose that: (i) patients were not improving in the CHABLIS-SC1 clinical trial; and (2) there were dosing problems inherent in the Solution Study design that created challenges to obtaining responses.

**The Truth Emerges**

37.     On November 10, 2016, prior to the market opening, the Company issued a press release announcing that the CHABLIS-SC1 clinical trial with blisibimod for the treatment of

SLE failed to meet its primary endpoint based upon the SLE Respondex Index-6 ("SRI-6") at 52

weeks.  The press release stated, in pertinent part:

> HAYWARD, Calif., Nov. 10, 2016 (GLOBE NEWSWIRE) -- Anthera Pharmaceuticals, Inc. (NASDAQ:ANTH) today announced that the CHABLIS-SC1 clinical trial with blisibimod for the treatment of systemic lupus erythematosus (SLE) failed to meet its primary endpoint based upon the SLE Responder Index-6 (SRI-6) at 52 weeks. Although 47% of patients in the blisibimod arm versus 42% of patients in the placebo arm achieved this endpoint, the difference was not statistically significant.  The SRI is a composite index comprised of SELENA-SLEDAI, BILAG and Physician Global Assessment criteria.  A SRI-6 response requires a decrease of at least 6 points in SELENA-SLEDAI.  The magnitude of blisibimod treatment effects for other SLE Response (SRI-4, and SRI-8) also did not achieve statistical significance.
>
> Serum biological markers including B-cells, immunoglobulins, and complement demonstrated statistically significant treatment effects consistent with expectations and previous blisibimod clinical studies in lupus and IgA nephropathy. Adverse events between the blisibimod and placebo treatment arms were well balanced and blisibimod was generally well tolerated.
>
> "We are disappointed that the results did not demonstrate a meaningful improvement in patients' disease activity as assessed by SRI endpoints," said William Shanahan, M.D., Anthera's Chief Medical Officer. "We would like to thank the patients, caregivers, investigators and key opinion leaders who made the CHABLIS-SC1 clinical study possible. It has yielded significant amounts of data which we look forward to sharing with the scientific community in the future which we believe will help to further inform the development of treatments for severe lupus."
>
> The Company will continue to analyze the data in the coming weeks from the CHABLIS-SC1 trial in consultation with key lupus disease thought leaders to expeditiously determine the future of the blisibimod lupus program including the on-going CHABLIS 7.5 clinical study.  As the pharmacological effects on immunological markers, such as B-cells and immunoglobulins, were as expected, the company is continuing the development of blisibimod for the treatment of IgA Nephropathy (IgAN) pending 48 week results from the ongoing phase 2 BRIGHT study. IgAN has a very different pathogenesis than systemic lupus, and the pharmacological activity of blisibimod might prove effective in its treatment.  The Company expects to report 48-week data from the

CLASS ACTION COMPLAINT

BRIGHT-SC IgAN study and topline data from the Sollpura™ SOLUTION phase 3 study later this year.

38.     As a result of the adverse results of the blisibimod trial, the price of Anthera common stock declined from a closing share price of $2.78 on November 9, 2016, to $1.90 on November 10, 2016, *a loss of approximately 32%*, on extremely heavy trading volume.

39.     The truth was further revealed on December 27, 2016, when the Company issued a press release announcing the Solution clinical study in cystic fibrosis patients with EPI missed the CFA non-inferiority margin of the primary modified Intent to Treat ("mITT") analysis likely due to the structure of the study, which likely hindered the results by not allowing some patients to increase their dosage during the testing.  The press release stated, in pertinent part:

> HAYWARD, California, December 27 2016 - - Anthera Pharmaceuticals, Inc. (NASDAQ: ANTH) today announced the top line results of the SOLUTION clinical study in cystic fibrosis patients with exocrine pancreatic insufficiency (EPI).  The study narrowly missed the CFA non-inferiority margin of the primary modified Intent to Treat (mITT) analysis; however, by additional pre-specified analyses of CFA (mITT-Baseline Observation Carried Forward and Per Protocol), Sollpura met the non-inferiority criterion.  The study also confirmed that the ratio of the three enzymes in Sollpura demonstrated an appropriate response in the coefficient of nitrogen absorption (CNA).  CNA is a measure of protein digestion and absorption and is a key requirement of Anthera's planned US FDA regulatory submission.  Anthera expects to release data from the extension phase of the study in Q1 2017.
>
> In analyzing the results of the SOLUTION study, patients' ability to increase their doses during the study were hindered by time restrictions and amounts allowed per protocol, while other patients were prevented from increasing their dose due to the daily limit (10,000 lipase units/kg/day) for porcine pancreatic enzyme replacement therapies (PERTs). Sollpura was generally well tolerated compared to Pancreaze, although symptoms related to malabsorption were generally modestly more frequent in the Sollpura arm.
>
> In addition to the *challenges to dose escalation inherent in the design of the SOLUTION study, analytical techniques for measuring the activity of lipase enzymes based on duodenal pH of Cystic Fibrosis patients, indicate that Sollpura may have been under dosed versus the Pancreaze labeled dose*.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8

Given the robust activity of Sollpura in this study, in the context of dose titration limitation and apparent reduced dosage activity, Anthera will initiate activities for an additional clinical study of Sollpura in patients with EPI due to Cystic Fibrosis, which Anthera expects will enable optimized dosing and dose titration. This study will provide investigators and patients the flexibility to adjust their Sollpura dose based upon malabsorption symptoms at any time during the study.  Anthera believes that these modifications in the study design will allow patients to achieve the optimal level of fat absorption as measured by CFA.  The new study will begin in 1Q'17, and Anthera anticipates only a modest delay in the filing of the BLA around Q1 2018, as the new study will complete concurrently with the completion of required CMC activities.

9
10
11
12
13
14

"In the SOLUTION study, Sollpura nearly met the non-inferiority margin with respect to fat absorption, and met the statistical criterion for nitrogen absorption. The study data suggest that the deficiency in fat absorption may be addressed by small changes in study design, including more liberal dose adjustment.  A need for alternative treatments remains for EPI patients who are unable to maintain appropriate nutritional health, especially those who seek soluble or non-porcine therapeutic options" said Michael Konstan, MD, Vice Dean for Translational Research at Case Western Reserve University School of Medicine.

15
16
17
18
19
20
21

"Although we are disappointed to narrowly miss the primary endpoint, we remain encouraged by the overall SOLUTION study results and look forward to releasing final data from and its 12 week extension phase in the future, the SIMPLICITY study and continuation of the open-label EASY study.  We would like to thank the patients, investigators and study staff for their hard work and dedication to our study. We are most grateful for their commitment to our shared hope of developing new treatments for exocrine pancreatic insufficiency, and believe that the shortcomings of Sollpura in SOLUTION can be addressed in the new study that we plan to initiate in 1Q'17," said William Shanahan, M.D., Anthera's Chief Medical Officer.

22
23
24

40.     As a result of the adverse results of the Solution Study, the price of Anthera common stock declined from a closing share price of $2.01 per share on December 27, 2016 to $0.74 per share on December 28, 2016, *a loss of approximately 63%*.

25

**ADDITIONAL SCIENTER ALLEGATIONS**

26
27
28

41.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or

CLASS ACTION COMPLAINT

1   disseminated to the investing public; and knowingly and substantially participated or acquiesced

2   in the issuance or dissemination of such statements or documents as primary violations of the

3   federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their

4   receipt of information reflecting the true facts regarding Anthera, their control over, and/or

5   receipt and/or modification of Anthera's allegedly materially misleading statements and/or their

6   associations with the Company which made them privy to confidential proprietary information

7   concerning Anthera, participated in the fraudulent scheme alleged herein.

8                                          **LOSS CAUSATION**

9            42.      During the Class Period, as detailed herein, Defendants made false and

10   misleading statements and engaged in a scheme to deceive the market and a course of conduct

11   that artificially inflated the price of Anthera's securities and operated as a fraud or deceit on

12   Class Period purchasers of Anthera securities by materially misleading the investing public.

13   Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to

14   the market, the price of Anthera's securities fell precipitously, as the prior artificial inflation

15   came out of the price over time. As a result of their purchases of Anthera securities during the

16   Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages,

17   under the federal securities laws.

18                     **APPLICATION OF PRESUMPTION OF RELIANCE:**
19                            **FRAUD-ON-THE-MARKET DOCTRINE**

20           43.      At all relevant times, the market for Anthera's securities was an efficient market

21   for the following reasons, among others:

22           a.   Anthera securities met the requirements for listing, and was listed and actively

                  traded on the NASDAQ, a highly efficient and automated market;
23

24           b.   Anthera filed periodic public reports with the SEC and the NASDAQ; and

25           c.   Anthera regularly communicated with public investors via established market

26                communication mechanisms, including regular disseminations of press releases

27                on the national circuits of major newswire services and other wide-ranging

28                public disclosures, such as communications with the financial press and other

                  similar reporting services.

                                **CLASS ACTION COMPLAINT**

44.     As a result of the foregoing, the market for Anthera's securities promptly digested current information regarding Anthera from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all purchasers of Anthera securities during the Class Period suffered similar injury through their purchase of Anthera securities at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Anthera who knew that the statement was false when made.

**CLASS ACTION ALLEGATIONS**

46.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Anthera securities during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable, since Anthera has millions of shares of stock outstanding and because the

Company's shares were actively traded on the NASDAQ.  As of October 31, 2016, Anthera had approximately 42 million shares issued and outstanding. While the exact number of Class members in unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

48.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

a.   whether the Exchange Act was violated by Defendants;

b.    whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

c.   whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.   whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

e.   whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

f.   whether the price of Anthera securities was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

g.   whether the members of the Class have sustained damages as a result of the decline in value of Anthera's stock when the truth was revealed, and if so, what is the appropriate measure of damages?

49.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

50.     Plaintiff will adequately protect the interests of the Class and has retained

CLASS ACTION COMPLAINT

1  counsel who are experienced in class action securities litigation. Plaintiff has no interests which

2  conflict with those of the Class.

3      51.    A class action is superior to other available methods for the fair and efficient

4  adjudication of this controversy.

**CLAIMS FOR RELIEF**

**COUNT I**
**Violation of Section 10(b) of**
**the Exchange Act and SEC Rule 10b-5**
**(Against All Defendants)**

10     52.    Plaintiff incorporates by reference each and every preceding paragraph as though

11  fully set forth herein.

12     53.    This Count is asserted by Plaintiff on behalf of themselves and the Class against

13  all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and

14  Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

15     54.    During the Class Period, Defendants carried out a plan, scheme, and course of

16  conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing

17  public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and

18  maintain the market price of Anthera's common stock; and (iii) cause Plaintiff and other

19  members of the Class to purchase or otherwise acquire Anthera's common stock at artificially

20  inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the

21  Defendants, and each of them, took the actions set forth herein.

22     55.    Defendants, by the use of means and instrumentalities of interstate commerce:

23  (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material

24  fact and/or omitted to state material facts necessary to make the statements made not

25  misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud

26  and deceit upon the purchasers and acquirers of the Company's common stock in an effort to

27  maintain artificially high market prices for Anthera's common stock in violation of Section

28  10(b) of the Exchange Act and Rule 10-5.

56.     As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete, and accurate information.  Defendants' material misrepresentations and omissions as set forth herein violated that duty.

57.     Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class.  Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

58.     As a result of Defendants' fraudulent activity, the market price of Anthera was artificially inflated during the Class Period.

59.     In ignorance of the true financial condition of Anthera, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Anthera containing the misleading information, purchased or otherwise acquired Anthera's common stock at artificially inflated prices during the Class Period.

60.     Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in Anthera's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Anthera's stock in reliance on the integrity of the market price of that common stock, and Defendants manipulated the price of Anthera's common stock through their misconduct as described herein. Plaintiff's and the Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Anthera.

61.     Throughout the Class Period, Defendants were aware of material non-public

information concerning Anthera's fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

62.     As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Anthera common stock during the Class Period.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

63.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

64.     During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains solely under the control of the Defendants.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed such filings,

1    reports, releases and other statements prior to or shortly after their issuance and had the ability

2    or opportunity to prevent their issuance or to cause them to be corrected.

3         66.    The Individual Defendants also were able to, and did, directly or indirectly,

4    control the conduct of Anthera's business, the information contained in its filings with the SEC,

5    and its public statements. Moreover, the Individual Defendants made or directed the making of

6    affirmative statements to securities analysts and the investing public at large, and participated in

7    meetings and discussions concerning such statements. Because of their positions and access to

8    material non-public information available to them but not the public, the Individual Defendants

9    knew that the adverse facts specified herein had not been disclosed to and were being concealed

10   from the public and that the positive representations that were being made were false and

11   misleading. As a result, the Individual Defendants are responsible for the accuracy of Anthera's

12   corporate releases detailed herein and is therefore responsible and liable for the

13   misrepresentations contained herein.

14        67.    The Individual Defendants acted as controlling persons of Anthera within the

15   meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company,

16   the Individual Defendants had the power and authority to cause Anthera to engage in the

17   wrongful conduct complained of herein. The Individual Defendants controlled Anthera and all

18   of its employees. As alleged above, Anthera is a primary violator of Section 10(b) of the

19   Exchange Act and SEC Rule 10b-5.  By reason of their conduct, the Individual Defendants are

20   liable pursuant to section 20(a) of the Exchange Act.

21        68.    As a direct and proximate result of the wrongful conduct of Anthera and the

22   Individual Defendants, Plaintiff and members of the Class suffered damages in connection with

23   their respective purchases and sales of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

24   **WHEREFORE**, Plaintiff demands judgment as follows:

25

26       (A)     Declaring this action to be a class action pursuant to Rule 23 of the

27   Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and her

28   counsel as Class counsel;

1      (B)       Awarding Plaintiff and the members of the Class damages, including

2  interest;

3      (C)       Awarding Plaintiff and the Class their reasonable costs and expenses

4  incurred in this action, including and attorneys' fees; and

5      (D)       Awarding such equitable/injunctive or other relief as the Court may deem

6  just and proper.

<b><u>JURY DEMAND</u></b>

7

8       Plaintiff demands a trial by jury.

9  Dated:  February 13, 2017            **LEVI & KORSINSKY LLP**

10

11                    By:  /s/ *Rosemary M. Rivas*
                          Rosemary M. Rivas

12                    44 Montgomery Street, Suite 650
                    San Francisco, CA 94104

13                    Tel: (415) 291-2420
                    Fax: (415) 484-1294

14

15                    Shannon L. Hopkins (*to be admitted pro hac vice*)

16                    Email: shopkins@zlk.com
                    Stephanie A. Bartone (*to be admitted pro hac vice*)

17

18                    Email: sbartone@zlk.com
                    **LEVI & KORSINSKY LLP**

19                    733 Summer Street, Suite 304
                    Stamford, CT 06901

20                    Tel: (203) 992-4523
                    Fax: (212) 363-7171

21

22                    *Counsel for Plaintiff Brian Clevlen and the Proposed Class*

23

24

25

26

27

28

19

<u>CLASS ACTION COMPLAINT</u>

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Brian Clevlen, duly certify and say, as to the claims asserted under the federal securities laws, that:

1.    I reviewed the complaint and authorized its filing

2.    I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transaction(s) involving Anthera Pharmacueticals, Inc. securities which are the subject of this litigation during the class period (are) set forth in the chart attached hereto.

5.    Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this 12th day of February 2017.

Signed: _____

Brian Clevlen

Brian Clevlen
Transactions in Anthera Pharmaceuticals, Inc.
Class Period: February 10, 2015 - December 27, 2016

| Date | Transaction | Quantity | Price Per Security | Cost/Proceeds |
|------|-------------|----------|--------------------|---------------|
| 7/23/15 | Purchase | 10 | $11.15 | $111.50 |
| 7/23/15 | Purchase | 5 | $11.15 | $55.75 |
| 7/23/15 | Purchase | 20 | $11.15 | $223.00 |
| 7/27/15 | Purchase | 15 | $11.00 | $165.00 |
| 7/29/15 | Purchase | 1 | $10.91 | $10.91 |
| 8/7/15 | Purchase | 5 | $10.00 | $50.00 |
| 8/11/15 | Purchase | 10 | $8.79 | $87.90 |
| 8/11/15 | Purchase | 2 | $9.00 | $18.00 |
| 8/24/15 | Purchase | 16 | $7.00 | $112.00 |
| 8/26/15 | Purchase | 1 | $6.67 | $6.67 |
| 9/15/15 | Purchase | 3 | $7.50 | $22.50 |
| 9/16/15 | Purchase | 4 | $7.97 | $31.88 |
| 9/25/15 | Purchase | 1 | $8.09 | $8.09 |
| 10/1/15 | Purchase | 15 | $6.03 | $90.45 |
| 10/1/15 | Purchase | 10 | $5.75 | $57.50 |
| 10/1/15 | Purchase | 2 | $5.54 | $11.08 |
| 10/15/15 | Purchase | 10 | $6.20 | $62.00 |
| 10/20/15 | Purchase | 100 | $6.19 | $619.00 |
| 10/21/15 | Purchase | 15 | $5.93 | $88.95 |
| 10/22/15 | Purchase | 3 | $5.85 | $17.55 |
| 10/28/15 | Purchase | 10 | $5.82 | $58.20 |
| 10/30/15 | Purchase | 15 | $5.80 | $87.00 |
| 11/6/15 | Purchase | 7 | $5.75 | $40.25 |
| 11/9/15 | Purchase | 75 | $5.76 | $432.00 |
| 11/10/15 | Purchase | 24 | $5.70 | $136.80 |
| 11/10/15 | Purchase | 2 | $5.70 | $11.40 |
| 11/18/15 | Purchase | 20 | $5.23 | $104.60 |
| 11/24/15 | Purchase | 23 | $5.13 | $117.99 |
| 11/24/15 | Purchase | 1 | $5.12 | $5.12 |
| 12/7/15 | Purchase | 5 | $4.93 | $24.65 |
| 12/7/15 | Purchase | 22 | $4.75 | $104.50 |
| 12/14/15 | Purchase | 10 | $4.62 | $46.20 |
| 12/14/15 | Purchase | 15 | $4.62 | $69.30 |
| 12/16/15 | Purchase | 4 | $4.37 | $17.48 |
| 12/21/16 | Purchase | 100 | $4.50 | $450.00 |
| 12/28/15 | Purchase | 50 | $4.50 | $225.00 |
| 12/28/15 | Purchase | 15 | $4.46 | $66.90 |
| 12/28/15 | Purchase | 100 | $4.45 | $445.00 |
| 12/28/15 | Purchase | 20 | $4.50 | $90.00 |
| 12/31/15 | Purchase | 24 | $4.48 | $107.52 |

| 1/7/16 | Purchase | 2 | $3.96 | $7.92 |
|---|---|---|---|---|
| 1/12/16 | Purchase | 30 | $3.11 | $93.30 |
| 1/12/16 | Purchase | 50 | $3.02 | $151.00 |
| 1/27/16 | Purchase | 20 | $3.10 | $62.00 |
| 2/1/16 | Purchase | 25 | $3.14 | $78.50 |
| 2/3/16 | Purchase | 5 | $2.86 | $14.30 |
| 2/11/16 | Purchase | 40 | $2.50 | $100.00 |
| 2/11/16 | Purchase | 2 | $2.52 | $5.04 |
| 2/18/16 | Purchase | 33 | $2.91 | $96.03 |
| 2/23/16 | Purchase | 3 | $3.01 | $9.03 |
| 5/2/16 | Purchase | 23 | $3.48 | $80.04 |
| 5/2/16 | Purchase | 1 | $3.47 | $3.47 |
| 5/5/16 | Purchase | 31 | $3.10 | $96.10 |
| 5/12/16 | Purchase | 30 | $3.32 | $99.60 |
| 6/14/16 | Purchase | 30 | $3.15 | $94.50 |
| 6/17/16 | Purchase | 60 | $2.98 | $178.80 |
| 6/27/16 | Purchase | 10 | $3.00 | $30.00 |
| 7/15/16 | Purchase | 33 | $3.00 | $99.00 |
| 8/25/16 | Purchase | 98 | $2.95 | $289.10 |
| 9/1/16 | Purchase | 70 | $2.90 | $203.00 |
| 10/12/16 | Purchase | 50 | $3.00 | $150.00 |
| 10/14/16 | Purchase | 70 | $2.94 | $205.80 |
| 10/17/16 | Purchase | 50 | $2.83 | $141.50 |
| 10/17/16 | Purchase | 21 | $2.81 | $59.01 |
| 10/18/16 | Purchase | 36 | $2.79 | $100.44 |
| 10/19/16 | Purchase | 55 | $2.63 | $144.65 |
| 11/4/16 | Purchase | 70 | $2.18 | $152.60 |